NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3158

DISCIPLINARY COUNSEL *v.* TURNER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Turner,* Slip Opinion No. 2014-Ohio-3158.]**

*Attorneys—Misconduct—Deposit of personal funds into client trust account— Failure to cooperate in disciplinary investigation—Two-year suspension, all stayed on condition.*

(No. 2013-1252—Submitted October 9, 2013—Decided July 23, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-078.

_____

**Per Curiam**.

**{¶ 1}** Talbert Randall Turner of Monroe, Ohio, Attorney Registration No. 0016670, was admitted to the practice of law in Ohio in 1983.

**{¶ 2}** On March 19, 1998, we sanctioned Turner for failing to comply with the continuing-legal-education ("CLE") requirements of Gov.Bar R. X for the 1995-1996 reporting period. *In re Continuing Legal Edn. Suspension of Turner*,

81 Ohio St.3d 1476, 691 N.E.2d 294 (1998). In 1999, the Butler County Bar Association filed a formal disciplinary complaint against Turner. While that matter was pending, Turner decided to cease the practice of law and seek other business opportunities, but he failed to change his registration to reflect that his license was inactive. We also suspended his license on April 5, 2000, for his failure to comply with CLE requirements. *In re Continuing Legal Edn. Suspension of Turner*, 88 Ohio St.3d 1463, 726 N.E.2d 1001 (2000).

**{¶ 3}** On May 31, 2000, we imposed a six-month conditionally stayed suspension for Turner's neglect of three separate probate matters and failure to deposit client funds into his client trust account. *Butler Cty. Bar Assn. v. Turner*, 89 Ohio St.3d 119, 729 N.E.2d 347 (2000). And on December 6, 2005, we suspended his license for his failure to timely register for the 2005-2007 biennium. *In re Attorney Registration Suspension of Turner*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671.

**{¶ 4}** Turner eventually decided to resume the practice of law, and we reinstated his license on August 24, 2006. *In re Turner*, 110 Ohio St.3d 1470, 2006-Ohio-4361, 852 N.E.2d 1217; *see also In re Turner*, 110 Ohio St.3d 1480, 2006-Ohio-4761, 854 N.E.2d 207 (reflecting that his 2005 registration suspension was cured on August 4, 2006). We suspended Turner again on November 2, 2011, for his failure to register as an attorney for the 2011-2012 biennium, although we reinstated his license two days later. *In re Attorney Registration Suspension of Turner*, 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.2d 310.

**{¶ 5}** In October 2012, relator, disciplinary counsel, charged Turner with misconduct arising from the deposit of personal funds into his client trust account, use of that account for his personal and business expenses, and failure to cooperate in the ensuing investigation. The parties submitted stipulated facts, misconduct, and aggravating and mitigating factors and agreed that a two-year

suspension, all stayed on the condition that Turner engage in no further misconduct, is the appropriate sanction for his current ethical violations.

{¶ 6} After conducting a hearing at which Turner testified, a panel of the Board of Commissioners on Grievances and Discipline issued a report adopting the parties' stipulations and recommended sanction. The board adopted the panel's report in its entirety. We adopt the findings and recommendation of the board and suspend Turner for two years, all stayed on the condition that he engage in no further misconduct.

## Misconduct

### Count One—Trust-Account Violations

{¶ 7} Turner maintains a client trust account at PNC Bank. From January 2007 to October 2011, Turner deposited more than $250,000 of his own money into his client trust account and used the account only to pay his personal and business expenses. Relator did not allege that this account ever contained any client funds during this time. Turner acknowledges that his use of the account was improper and reports that he no longer uses it for personal and business purposes.

{¶ 8} The parties stipulated, the board found, and we agree that this conduct violated Prof.Cond.R. 1.15(b) (prohibiting a lawyer from depositing his or her own funds in a client trust account except to pay or obtain a waiver of bank service charges) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

### Count Two—Failure to Cooperate

{¶ 9} On July 14, 2011, PNC Bank notified relator that Turner's client trust account had a negative balance. The first two letters of inquiry that relator sent to Turner were returned by the postal service. Relator sent three more letters by regular mail to various addresses in relator's file. All went unanswered. On

September 27, 2011, Turner's wife signed for a letter of inquiry that relator had sent by certified mail to his home.

{¶ 10} Turner responded by letter dated October 11, 2011, and soon thereafter, relator subpoenaed his client-trust-account records from PNC Bank. Based on the information obtained from those bank records, relator requested additional information from Turner in December 2011 regarding specific trust-account transactions. And in January 2012, relator expanded that request to include copies of Turner's 2007-2010 income tax returns and information regarding additional transactions. When Turner failed to respond to those requests, relator subpoenaed him for deposition.

{¶ 11} Before the scheduled deposition, Turner submitted a written response to relator's inquiries and stated that he would "promptly" provide copies of the requested tax returns, but he did not follow through on that promise. Nor did he respond to two additional letters, one of which contained an official form that, if executed, would have permitted relator to obtain copies of his tax returns directly from the Internal Revenue Service.

{¶ 12} On June 14, 2012, Turner left a voice message for relator stating that he would provide the requested tax returns in the next week and a half. In a June 26, 2012 letter, relator advised him that his failure to provide the records by July 6, 2012, would result in the filing of a disciplinary complaint against him. Turner did not provide the records.

{¶ 13} In late July, relator mailed a draft complaint to Turner, but it was returned unclaimed. A formal complaint was filed on August 23. Seven days later, relator received a letter from Turner, along with copies of his 2004 and 2006 tax returns. But these were not the forms that relator had requested. Turner finally provided the requested tax returns on January 4, 2013—a full year after relator had requested them. Relator stipulated that those returns did not reveal any additional misconduct.

**{¶ 14}** The parties stipulated, the board found, and we agree that this conduct violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and Gov.Bar R. V(4)(G) (prohibiting a lawyer from neglecting or refusing to assist in a disciplinary investigation).

**Sanction**

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 16}** The parties stipulated and the board found that Turner has a prior disciplinary record and that he initially failed to cooperate with relator's investigation into his current misconduct. *See* BCGD Proc.Reg. 10(B)(1)(a) and (e). As mitigating factors, the parties stipulated and the board found that Turner did not have a selfish or dishonest motive and that he cooperated in the disciplinary proceedings *after* relator filed his formal complaint, making a full and free disclosure to the board. *See* BCGD Proc.Reg. 10(B)(2)(b) and (d). The board also credited Turner's good character and reputation, as demonstrated by three letters from attorneys in his community and his self-reported community involvement. *See* BCGD Proc.Reg. 10(B)(2)(e).

**{¶ 17}** The parties stipulated and the board found that the appropriate sanction for Turner's misconduct is a two-year suspension, fully stayed on the condition that he engage in no further misconduct. In support of that sanction, they cite *Disciplinary Counsel v. Simon*, 128 Ohio St.3d 359, 2011-Ohio-627, 944 N.E.2d 660.

**{¶ 18}** In *Simon,* we adopted a consent-to-discipline agreement and imposed a one-year fully stayed suspension for an attorney who used his client trust account as a personal and business account for almost four years and failed to provide his tax returns to relator in a timely manner. Simon's misconduct was arguably more egregious than Turner's because he commingled personal and client funds in the account, while Turner's account is not alleged to have contained any client funds. But unlike Simon, Turner has a history of prior discipline, including two attorney-registration suspensions and a six-month stayed suspension for violating three Disciplinary Rules of the former Code of Professional Responsibility.[1] For that reason, we agree that his misconduct requires a greater sanction than the one-year stayed suspension we imposed in *Simon*, and we adopt the board's recommendation of a two-year suspension, stayed on the condition that Turner engage in no further misconduct.

**{¶ 19}** Accordingly, Talbert Randall Turner is suspended for two years, all stayed on the condition that he engage in no further misconduct. If Turner does not comply with the condition of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Turner.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., dissents and would impose an actual suspension of one year.

KENNEDY, J., not participating.

————————————

[1] He also had a prior CLE suspension in 2000 and a prior CLE monetary sanction in 1998, but Gov.Bar R. X(5)(C) provides that CLE sanctions shall not be considered in the imposition of sanctions for attorney misconduct.

Scott J. Drexel, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Talbert Randall Turner, pro se.

_____